IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

EDDIE CHANDLER,            )
                           )
      Petitioner,      )
                           )
vs.                        )   Case No. 2:13-cv-109-SLB-TMP
                           )
STATE OF ALABAMA and the   )
ATTORNEY GENERAL OF THE STATE )
OF ALABAMA,                )
                           )
      Respondents.     )

**MEMORANDUM OPINION**

This is an action pursuant to 28 U.S.C. § 2254 in which the petitioner challenges the constitutional validity of a conviction he received in the Circuit Court of Calhoun County, Alabama for trafficking marijuana. As explained below, all of the petitioner's claims are procedurally defaulted and he is entitled to no *habeas* relief.

Procedural History

On September 3, 2010, the grand jury in Calhoun County, Alabama, indicted the petitioner on one count of trafficking marijuana.[1] (Doc. 13-1). He was arraigned on January 27, 2011, and pleaded not guilty. He was represented by Attorney William Broome. On April 27, 2011, the petitioner pleaded guilty to a reduced charge of possession of marijuana pursuant to a plea agreement, and was sentenced on May 31, 2011, as a habitual offender to a term of fifteen

---

[1] According to his declaration, petitioner was arrested by state authorities on June 15, 2010, for possession of marijuana and placed in the Calhoun County Jail until September 2010, when he was transferred to FCI-Morgantown to begin serving a *federal* sentence imposed after his supervised release in an earlier federal case was revoked, based principally on the June arrest. He was then sent back to Calhoun County in January 2011 for prosecution of the state marijuana charge.

years, which was suspended with five years of probation instead. (Doc. 13-2). Petitioner did not appeal, and the conviction became final 42 days later, on July 12, 2011, when the time for appeal expired. There is no indication in the record, and petitioner does not allege, that he has filed any state post-conviction petition challenging the conviction or sentence.

While serving a federal sentence at FCI-Morgantown, West Virginia, petitioner filed the instant petition for § 2254 relief in the United States District Court for the Northern District of West Virginia, on May 7, 2012. The petition was transferred to this court on January 7, 2013, being docketed in this court on January 17, 2013. The original petition alleged two principal claims, both asserting some form of ineffective assistance of counsel in violation of the Sixth Amendment. Those claims are:

> 1. Petitioner's trial counsel, Broome, failed to meet with and interview Brian Studdard, who purportedly could testify that he heard another man, Colin Law, admit that he had planted the marijuana plants for which petitioner was charged (Claim 1).
>
> 2. Petitioner's trial counsel failed to adequately investigate and prepare for petitioner's *federal* supervised release revocation hearing because counsel (a) failed to retain an investigator to rebut the testimony of Government witnesses, (b) failed to obtain and use photographs of petitioner's property and adjacent property, (c) failed to properly prepare petitioner and his wife, Michelle, to testify as witnesses at the revocation hearing, (d) failed to conduct and obtain pre-hearing discovery from the Government, leaving him unable to effectively cross-examine the Government's main witness, agent Carter Allen, and (e) failed to file a motion to suppress the fruits of a search of petitioner's truck, pursuant to Arizona v. Gant (Claim 2).

Following the transfer of the petition to this court, the court granted petitioner's motion to amend the petition to add a claim (Claim 3) that his guilty plea was taken while the state courthouse was closed due to inclement weather and his family was not present. (Docs. 8 and 11). Later, petitioner filed several other motions to amend the petition, but the court allowed only an

2

amendment (Doc. 22) alleging (Claim 4) that petitioner was coerced by counsel into pleading guilty even though counsel knew petitioner was not guilty of the marijuana charge. (Doc. 29). On August 5, 2014, petitioner again sought leave to amend the petition to allege (Claim 5) that trial counsel falsely represented to him, in an attempt to persuade petitioner to plead guilty, that petitioner's wife and brother would testify against him to the effect that petitioner was growing the marijuana plants near his home. (Doc. 37). Petitioner asserts that this information from counsel was false and known by counsel to be false, and that it caused petitioner to forgo trial and plead guilty. The court allowed this amendment as well. (Doc. 39).

Ultimately, the respondents filed answers to these claims, asserting that all of the claims are procedurally defaulted. (Docs. 13, 30, and 42). In particular, respondents point out that, with respect to all claims of ineffective assistance of counsel, petitioner has not filed any Rule 32 or other state post-conviction petition, nor did he appeal any claim related to the legality of the guilty plea taking place while the courthouse was closed for inclement weather.

The court notified the parties that the petition and answers would be taken under submission for summary adjudication, and petitioner was given the opportunity to reply to the assertion of procedural default raised in the respondents' answers. Petitioner filed his traverse on January 5, 2015 (Doc. 45), asserting that he is factually innocent of the marijuana-possession charge and that he only recently discovered that trial counsel's statements about petitioner's wife and brother being available to testify against him were not true. Petitioner contends he only recently discovered that his wife and brother would *not* testify against him, contrary to what he was told by counsel.

3

Procedural Default

The Petitioner contends in Claims One, Two,2 Four, and Five that he received various forms of ineffective assistance of counsel and, in Claim Three, that his Sixth Amendment rights were violated because he was sentenced when the courthouse was closed and he was not given a full plea colloquy.  These claims are procedurally defaulted because petitioner has not brought any of them in a state-court post-conviction proceeding.3  When a habeas claim has never been presented to a state court and there no longer exists any remedial vehicle by which the state courts may consider the claim, the United States Supreme Court has held that it is procedurally defaulted.  Teague v. Lane, 489 U.S. 288, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989).  The court is not required to dismiss the claims as unexhausted because the defaults are apparent and it would be futile to send the petitioner back to state court only to be faced with them.  See Collier v. Jones, 910 F.2d 770 (11th Cir. 1990); Whiddon v. Dugger, 894 F.2d 1266 (11th Cir. 1990).  Consequently, under the authority of Teague, the Petitioner is procedurally barred from raising these claims absent a showing of adequate cause and prejudice for failing to raise the issues on direct appeal or in a properly filed Rule 32 petition.  See Whiddon v. Dugger, 894 F.2d 1266

---

2  Claim Two actually challenges counsel's performance at a *federal* supervised release revocation hearing where petitioner's prior federal supervised release was revoked on the basis of the new state marijuana trafficking charge that is the basis of the instant § 2254 petition. Challenges to that proceeding must be brought in a separate motion to vacate the *federal* sentence pursuant to 28 U.S.C. § 2255, not the instant § 2254 petition.  To the extent, therefore, that petitioner alleges ineffective assistance at the *federal* supervised-release revocation hearing, the claim does not implicate the constitutional validity of his state-court conviction at issue in this case.  Nonetheless, if it was petitioner's intent to allege these same claims of ineffective assistance with respect to his state conviction, they are procedurally defaulted.

3  As to Claim Three, the court notes that it also was procedurally defaulted because petitioner failed to raise it in any direct appeal.  In fact, petitioner did not file a direct appeal, even though Claim Three, relating to the sentencing occurring while the courthouse was closed, could have been raised and reviewed on direct appeal.

4

(11th Cir. 1990).

If a petitioner has procedurally defaulted on a constitutional claim, he is barred from litigating it in a federal habeas corpus proceeding unless he can show adequate "cause" for and "actual prejudice" from the default, or by showing that failing to consider the claim is a fundamental miscarriage of justice. Engle v. Isaac, 456 U.S. 107, 102 S. Ct. 1558, 71 L. Ed. 2d 783 (1982); Wainwright v. Sykes, 433 U.S. 71, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977); Wilson v. Jones, 902 F.2d 923, 925 (11th Cir. 1990). The "cause and prejudice" test of Engle v. Isaac and Wainwright v. Sykes is in the conjunctive; therefore, the petitioner must prove both cause and prejudice. The United States Supreme Court summarized the "cause" standard in the following manner:

> In *Wainwright v. Sykes*, 433 U.S. 72 (1977), this Court adopted the "cause and prejudice" requirement of *Francis v. Henderson*, *supra*, for all petitioners seeking federal habeas relief on constitutional claims defaulted in state court. The *Sykes* Court did not elaborate upon this requirement, but rather left open "for resolution in future decisions the precise definition of the 'cause-and-prejudice' standard." 433 U.S. at 87. Although more recent decisions likewise have not attempted to establish conclusively the contours of the standard, they offer some helpful guidance on the question of cause. In *Reed v. Ross*, 468 U.S. 1 (1984), the Court explained that although a "tactical" or "intentional" decision to forgo a procedural opportunity normally cannot constitute cause, id. at 13-14, "the failure of counsel to raise a constitutional issue reasonably unknown to him is one situation in which the [cause] requirement is met." *Id*. at 14. The Court later elaborated upon *Ross* and stated that "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v. Carrie*r, 477 U.S. 478, 488 (1986). We explained that "a showing that the factual or legal basis for a claim was not reasonably available to counsel, . . . would constitute cause under this standard." *Ibid*. (Citations omitted.)

5

Amadeo v. Zant, 486 U.S. 214, 221-22, 108 S. Ct. 1771, 100 L. Ed. 2d 249 (1988).

The petitioner also must demonstrate that he was prejudiced; he must show "not merely that the errors . . . created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 71 L. Ed. 2d 816 (1982) (emphasis in original). A federal habeas court, however, will consider a procedurally defaulted claim in the absence of cause if a "fundamental miscarriage of justice" has "probably resulted in the conviction of one who is actually innocent." Smith v. Murray, 477 U.S. 527, 537-38, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986) (quoting, respectively, Engle, 456 U.S. at 135, and Murray, 477 U.S. at 496).

Petitioner has not shown "cause and prejudice" excusing the procedural default with respect to any of his claims. As to each of the ineffective assistance of counsel claims in Claims One, Two, Four, and Five, he was fully aware of the facts relating to his counsel's representation of him, yet he failed to even file a state Rule 32 petition seeking a remedy. The one-year limitation for doing so now has expired. Petitioner argues that he did not learn until recently that, contrary to counsel's representations to him, his wife and brother did not plan to testify against him. Even so, he was keenly aware of what those witnesses could or could not have said in testimony, yet he chose to plead guilty to the lesser charge. Moreover, he has shown no reason why, even after he pleaded guilty, he could not have determined from his wife and brother much sooner that counsel's representations about them were false. He has not shown that he was prevented from asserting these claims of ineffective assistance of counsel in a timely Rule 32 petition.

6

Petitioner also has failed to show prejudice, as the second requirement of excusing procedural default. None of the claims presented have merit. As to Claim One, counsel's failure to contact Brian Studdard does not mean that Studdard could have been an exculpatory witness for petitioner. All Studdard could have said is that he overheard Colin Law admit to planting the marijuana with which petitioner was charged. Not only is there no evidence that *Law* would admit to this, it also does not prove that petitioner was not involved. The allegations of ineffective assistance in Claim Two related to a totally different *federal* proceeding, not the state charge at issue in this case. In Claim Three, petitioner argues that he was sentenced while the courthouse was closed for inclement weather, but he does not allege that this resulted in any difference in the sentence he received. In Claim Four he alleges nothing more than that counsel "coerced" him into pleading guilty by advising him of the sentencing consequences in the event he were convicted at trial. It is not coercion for counsel to fully inform his client of the alternatives the client faces, including the prospect that conviction can carry a long, harsh sentence. Finally, in Claim Five, he alleges that counsel tricked him into pleading guilty by telling him that his wife and brother would testify against him if he went to trial. In fact, petitioner's wife admits in her affidavit that she already had testified at petitioner's revocation hearing (thereby waiving any marital privilege) and that she "had a thought" that petitioner might be growing marijuana. Also, petitioner's brother admits that authorities were arranging for him to be transported from his own prison cell to testify at petitioner's trial, even though he adamantly claims he would have refused to do so. In planning for trial, it was not unreasonable for counsel to fear and plan for the prospect of these two witnesses testifying against petitioner. For these reasons, none of petitioner's claims are meritorious and, therefore, he suffers no

prejudice from the court's refusal to consider them.

He has also not made a showing of factual innocence so that the claims can be considered under the "fundamental miscarriage of justice" exception. In Claim Four of his *habeas* petition, as amended, Petitioner argues that newly discovered evidence (the affidavits of his wife, brother, and Brian Studdard and a handwritten note from his trial attorney) illustrates that he actually is innocent and that denying his *habeas* petition would constitute a fundamental miscarriage of justice. The Supreme Court made clear in Schlup v. Delo that "habeas corpus petitions that advance a substantial claim of actual innocence are extremely rare." 513 U.S. 298, 321, 115 S. Ct. 851, 864, 130 L. Ed. 2d 808 (1995). In order to advance a claim of actual innocence, the petitioner must "show that it is more likely than not that 'no reasonable juror' would have convicted him." Schlup, 513 U.S. at 329, 115 S. Ct. at 868. A sufficient showing "requires the petitioner to produce new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." Melson v. Allen, 548 F.3d 993, 1002 (11th Cir. 2008), quoting Arthur v. Allen, 452 F.3d 1234, 1243 (11th Cir. 2006), quoting Schlup, 513 U.S. at 324. (internal quotations omitted). The Fifth Circuit Court of Appeals has noted that, in addition to exculpatory scientific evidence, trustworthy eyewitness accounts, and certain physical evidence, "credible declarations of guilt by another" are examples of the types of new, reliable evidence that may be used to establish factual innocence. Fairman v. Anderson, 188 F.3d 635, 644 (5th Cir. 1999), citing Schlup, 513 U.S. at 324; Sawyer v. Whitley, 505 U.S. 333, 340, 112 S. Ct. 2514, 120 L. Ed. 2d 269 (1992).

A threshold question is whether the evidence proffered in support of an innocence claim is new. "New evidence" has not been defined by the Supreme Court or the Eleventh Circuit

Court of Appeals in the context of the actual innocence gateway, but the Fifth Circuit Court of Appeals, evaluating both a free-standing actual innocence claim and a "gateway" claim in Lucas v. Johnson, 132 F. 3d 1069, 1074 (5th Cir. 1998), set the same evidentiary standard for both. That court noted that "much of the evidence alleged by Lucas to be newly discovered is neither new nor newly discovered, but in its essence and character, was presented, or available to present, to the trial jury." Id. That court went on to require a showing that: "(1) the evidence is newly discovered and was unknown to the defendant at the time of trial; (2) the defendant's failure to detect the evidence was not due to a lack of diligence; (3) the evidence is material, not merely cumulative or impeaching; and (4) the evidence would probably produce acquittal at a new trial." 132 F.3d at 1075 n.3. Similarly, both the Seventh and Eighth Circuit Courts of Appeals have required that a claim of actual innocence be brought within a year of the date on which the facts could have been discovered through the exercise of due diligence. Araujo v. Chandler, 435 F.3d 678, 680-81 (7th Cir. 2005), cert. denied, 549 U.S. 820 (2006) (finding that the petitioner failed to exercise the requisite diligence in bringing to federal court the facts he claimed show that he is innocent); Flanders v. Graves, 299 F.3d 974 (8th Cir. 2002), cert. denied, 537 U.S. 1236 (2003). In the Tenth Circuit, the appellate court has required that a petitioner demonstrate due diligence in addition to satisfying the "high actual innocence standard." Fleenor v. Scott, 37 Fed. Appx. 415, 417 (10th Cir. 2002).

Once the petitioner has come forward with new evidence, a *habeas* court next must evaluate the reliability of that evidence. The court may consider "the timing of the submission and the likely credibility of the affiants" in judging the reliability of the evidence. Melson, 548 F.3d at 1002. The court is "not required to test the new evidence by a standard appropriate for

deciding a motion for summary judgment." Bosley v. Cain, 409 F.3d 657, 664 (5th Cir. 2005), cert. denied, 547 U.S. 1208 (2006). The court not only reaches its own decisions about credibility and reliability, the court further must assess "the likely impact of this new evidence on reasonable jurors." 548 F.3d at 1002. It has been noted that "[n]ew evidence that merely undermines the state's theory of the case but does not rebut specific jury findings of guilt is insufficient to demonstrate actual innocence." Buckner v. Polk, 453 F.3d 195, 200 (4th Cir. 2006), cert. denied, 549 U.S. 1284 (2007).

Because of the importance of the evaluation of actual innocence, a district court "is not bound by the rules of admissibility that would govern at trial" and can consider evidence that is "claimed to have been wrongly excluded" or which "became available only after the trial." Schlup, 513 U.S. at 328. Although inadmissible evidence may be considered, its reliability still must be evaluated by the court. Similarly, the district court may evaluate the credibility of witnesses who testified at trial in light of the newly discovered evidence. 518 U.S. at 330-32. A petitioner meets the threshold requirement if he persuades the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. 513 U.S. at 327. Consequently, the burden that Petitioner must meet in order to prevail is to establish by "new, reliable evidence" that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence. He must do more than show that a reasonable doubt exists in light of the new evidence. See, e.g., Bosley v. Cain, 409 F.3d 657, 664 (5th Cir. 2005).

It has been noted that actual innocence "means factual innocence, not mere legal insufficiency." Bousley v. United States, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828

(1998).  Actual innocence means that the person convicted did not commit the crime.  Rodriquez v. Johnson, 104 F.3d 694, 697 (5th Cir. 1997), cert. denied, 520 U.S. 1267 (1997), quoting Johnson v. Hargett, 978 F.3d 855, 859-60 (5th Cir. 1992), citing McCleskey v. Zant, 499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).   "Even if the court, as one reasonable factfinder, would vote to acquit, the court must step back and consider whether the petitioner's evidentiary showing most likely places a finding of guilt beyond a reasonable doubt outside of the range of potential conclusions that any reasonable juror would reach."  Doe v. Menefee, 391 F.3d 147, 173 (2d Cir. 2004).  In other words, a court may determine that, as factfinder, it would return a verdict of not guilty, yet still reject a petitioner's argument that he is actually innocent.  See, e.g., Lambert v. Blackwell, 134 F.3d 506 (3d Cir. 1997), cert. denied, 532 U.S. 919 (2001).  As the Eleventh Circuit Court of Appeals noted in Melson, "[t]he demanding nature of the Schlup standard ensures that only the 'extraordinary' case will merit review of the procedurally barred claims."  548 F.3d at 1002.

In the instant case, Petitioner's claims of actual innocence rest on the affidavits of Michelle Chandler and Phillip Chandler (Petitioner's wife and brother), and a handwritten note from Petitioner's trial counsel stating, "I know you were not guilty and wanted to go to trial."  None of the evidence presented by Petitioner constitutes "new" evidence under Schlup.  The note from Petitioner's attorney was dated June 2, 2011.  (Doc. 1-2, p. 25).  Petitioner did not file the instant habeas petition for almost a year after receiving the note.  Petitioner did not exhibit due diligence by failing to take any action concerning the letter for eleven months.   However, even if the court were to consider the letter to be "new" evidence at the time of the habeas petition, the letter is not exculpatory scientific evidence, a trustworthy eyewitness account,

critical physical evidence, or any type of evidence that illustrates Petitioner's actual innocence. A subjective statement of belief that Petitioner was innocent is far from proof that Petitioner did not commit the crime, which is the type of proof required to open the actual innocence gateway.

The affidavits from petitioner's wife and brother also are not "new" evidence for *habeas* purposes. Petitioner admits that he has spoken to his wife, Michelle, on more than one occasion since his conviction. He could have acquired the information in the affidavit from her during any of those conversations. Instead, Petitioner waited until at or around August 1, 2014, to have her prepare an affidavit. Accordingly, petitioner cannot show that the evidence contained in Michelle's affidavit was not available prior to trial or shortly after trial. Even if the evidence could be considered "new," petitioner cannot show that he diligently pursued the evidence. Moreover, his delay in presenting such evidence is a factor weighing heavily against its credibility. Petitioner claims that he did not speak to his brother from 2010 to July 2014, and, therefore, his affidavit is newly discovered evidence. It appears from Phillip Chandler's affidavit that he was incarcerated during the time of petitioner's trial. Therefore, the ease with which petitioner could have contact with Phillip and discover the evidence in the affidavit is questionable. However, even if the evidence in Phillip's affidavit is "new" for habeas purposes, the affidavit does not contain any exculpatory evidence. It simply says that Phillip had no intention of testifying against petitioner at trial (contrary to what petitioner's attorney had told him).

Even if the note from petitioner's trial attorney and the affidavits of his wife and brother were newly discovered, petitioner cannot show that, in light of the information in the affidavits, "no reasonable juror would have convicted" him. Schlup, 513 U.S. at 327. Neither of the

affidavits contains evidence of petitioner's actual innocence, nor does the note from petitioner's trial attorney. Nothing in the affidavits or the note suggests that petitioner has discovered new material evidence showing he is actually innocent. Petitioner has presented no evidence unavailable at or shortly after trial that, had it been presented at a trial, would likely have resulted in an acquittal.

Petitioner does, however, include an affidavit from Brian Studdard in his original habeas petition. (Doc. 1-1). Studdard's affidavit states that he told Chandler while they were both incarcerated at the Calhoun County Jail that another individual had told Studdard that he (not Chandler) had planted the marijuana plants for which Chandler ultimately was arrested. Studdard claims that he informed Chandler he would testify on his behalf, but Chandler's attorney never approached Studdard. While the affidavit may contain the type of exculpatory evidence contemplated by the "actual innocence" doctrine, Studdard's testimony was available to Chandler well before trial.4 Accordingly, Chandler cannot now invoke the actual innocence doctrine to introduce Studdard's affidavit as "new evidence." For all of the above reasons, Chandler has failed to meet the demanding standard of "actual innocence," and the instant petition cannot now be considered.

## Conclusion

Based on the foregoing considerations, the court finds that the petition for writ of *habeas corpus*, as amended, is due to be denied and dismissed with prejudice. A separate order will be entered.

---

4  It is also unlikely that Studdard's testimony would have been admissible due to the hearsay rule.

**DONE** this the 17th day of November, 2015.

*/s/ Sharon Lovelace Blackburn*
SHARON LOVELACE BLACKBURN
SENIOR UNITED STATES DISTRICT JUDGE